U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 6, 2007**

_____

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SYNERGISTIC TECHNOLOGIES, INC., | § | CASE NO. 07-31733-SGJ-7 |
| | § | |
| DEBTOR. | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF JUDGMENT GRANTING SYNERGISTIC TECHNOLOGIES, INC. ATTORNEY'S FEES AND COSTS, PURSUANT TO SECTION 303(i)(1), BUT DENYING SECTION 303(I)(2) DAMAGES

The following is the court's findings of fact, conclusions of law, and ruling on the Motion for Judgment, pursuant to Section 303(i), Against Petitioning Creditor Cuong Nguyen, for Attorney's Fees, Costs, and Actual and Punitive Damages, which Motion was filed on or about June 10, 2007, in the name of the former Alleged Debtor, Synergistic Technologies, Inc. ("Synergistic" or "Alleged Debtor").

1

FINDINGS OF FACT[1]

1.   This court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.   The relevant background facts are that an involuntary Chapter 7 bankruptcy case was filed against Synergistic on April 5, 2007 by Cuong Nguyen, as sole petitioning creditor.

3.   Mr. Nguyen is a 33.33% shareholder of Synergistic and, at the time of filing the involuntary petition, was also a *former* officer and director of Synergistic (having resigned as an officer and director by letter on June 25, 2006).  Mr. Nguyen also claims to be an unsecured creditor of Synergistic by virtue of:  (a) acquiring, in August 2006, an approximately $146,715 undersecured note that Frost Bank formerly held against Synergistic (which note Nguyen had personally guaranteed); and (b) also by virtue of a $983 unsecured reimbursement claim that Nguyen allegedly has against Synergistic.

4.   Almost immediately after the involuntary petition was filed, a Motion to Dismiss the Involuntary Case was filed, purportedly by the Alleged Debtor, acting through Edward Mandel,

---

[1] Any finding of fact that should more appropriately be regarding as a conclusion of law should be regarded as such, and vice versa.

2

who is another 33.33% shareholder of Synergistic, and, at least at the time of the filing, was the sole director of Synergistic.

5.    For clarity, the parties and their roles will be further defined.  The Alleged Debtor, Synergistic, was organized as a Texas corporation on July 12, 2005 to provide software and consulting to businesses, primarily related to digital imaging, particularly in the mortgage banking industry.  At the time of its formation and all times since, there have been three 33.33% shareholders of Synergistic:  Messrs. Mandel, Nguyen, and Gonzales, each owning 1,000,000 shares of common stock, and each having contributed $50,000 of capital.  Mandel, Nguyen, and Gonzales were also each elected to be the three sole directors of Synergistic, at its inception, with Mandel elected chairman of the board.  The three directors chose Gonzales and Nguyen to be the only two officers of Synergistic, with Gonzales being chosen to be President and Treasurer, and Nguyen chosen as Executive Vice President and Secretary.  The Bylaws for Synergistic provide that, for the board of directors of Synergistic to act, there must be unanimous consent of the directors.  *See* Exh. PC-2 Article Three (Sections Ten and Eleven).

6.    On June 25, 2006, less than a year after Synergistic's formation, Nguyen and Gonzales each tendered their resignations

3

from Synergistic by letter, indicating they were resigning both their officer and director positions with the corporation effective immediately. Since then, Synergistic has technically been adrift, without any officers (*i.e.,* no management) in place. Mandel, as the sole director (although not an officer) has handled the affairs of Synergistic. However, the company has not been in operation since roughly the same time that Nguyen and Gonzales resigned their positions.

7. The company's only assets are roughly $4,700 in a bank account and possibly some causes of action against insiders. Synergistic's only creditors are: Nguyen (assuming he can indeed assert claims against Synergistic); Gonzales, who claims a $3,048 claim for expense reimbursement against Synergistic; a vendor named Unishippers, which may be owed approximately $300; and possibly a former landlord of Synergistic, in respect of an office lease in Irving, Texas—although the landlord has made no demands against Synergistic since September 2006, when it sent a letter indicating that Synergistic owed $2,617 for utilities (since the landlord held a $4000 deposit, it is possible the landlord looked to the deposit to satisfy this $2,617 claim). The court notes that whether the landlord has or will assert any remaining claim against Synergistic is highly questionable, since

4

Synergistic only occupied the leased premises for a few months—during all of which time it was in a rent-free period. Although the lease in question was for a 71-month term, and the rent abatement eventually would cease, the landlord has been silent for almost a year, suggesting mitigation or apathy. Thus, Synergistic has only one or possibly two non-insider creditors, with money in the bank to pay the only non-insider creditor who has made a demand (*i.e.,* Unishipper).

8. The three shareholders of Synergistic have been embroiled in state court litigation and arbitration for many months. Mandel, personally and in the name of Synergistic, derivatively, sued Gonzales and Nguyen on May 5, 2006, for alleged breach of the Synergistic shareholder agreement, breach of fiduciary duties, and usurpation of corporate opportunities. It appears that the main dispute in that lawsuit pertains to Nguyen and Gonzales having taken compensation during a startup phase of the company when, according to Mandel, no shareholder was permitted to take any compensation. This litigation morphed into arbitration before the American Arbitration Association ("AAA"). Mandel has alleged that Nguyen took $26,000 out in salary payments and Gonzales took $26,000 out in salary and $32,000 in loans from the company, for a total of $58,000.

5

Nguyen testified that actually less than this was taken—and it was subsequently returned.

9.   Mandel later (on March 16, 2007), individually and derivatively for Synergistic, filed a second state court lawsuit against CJ Technologies, a company that Nguyen and Gonzales formed in July 2006, immediately after resigning as officers and directors of Synergistic, which company is in the same business as Synergistic.  This suit is for conversion, misappropriation, and tortious interference with Synergistic's business prospects. The court notes that Nguyen and Gonzales have recently asserted that Mandel himself may have been usurping Synergistic's corporate opportunities, because of business opportunities that a company 80%-owned by Mandel may be pursuing with Lena Pope Homes, who had earlier been in discussions with Synergistic.

10.   It was in the midst of this various litigation and arbitration that Nguyen filed the involuntary petition against Synergistic.

11.   On May 16, 2007, the court held a held a hearing on the Alleged Debtor's Motion to Dismiss the Involuntary Case.  The sole focus of the parties then was on the question of whether Nguyen was an eligible Petitioning Creditor—*i.e.,* whether his claim against Synergistic was the subject of a bona fide dispute.

6

The standing of Mr. Mandel, acting as the *de facto* officer of the Alleged Debtor and opposing the Involuntary Petition, was not challenged. The court ultimately ruled that the Involuntary Petition should be dismissed, on the grounds that Mr. Nguyen did not have standing, as he, indeed, was not the holder of an unsecured claim that was not the subject of a bona fide dispute. The court believed there were genuine disputes as to whether Nguyen could assert the Frost Bank claim or other claims against Synergistic, for the reasons stated in the May 16th bench ruling. In the court's ruling, the court reserved jurisdiction to consider any request by Synergistic to recover attorney's fees, costs, actual damages, and punitive damages from the petitioning creditor(s), under sections 303(i)(1) and (2) of the Bankruptcy Code.

12. On July 24, 2007 and August 3, 2007, this court held hearings on the Motion of Synergistic, through Mr. Mandel, for section 303(i) damages against Mr Nguyen. For the first time, Mr. Nguyen challenged Mr. Mandel's authority to act for the Alleged Debtor in these proceedings and, thus, his standing to seek section 303(i) damages. In essence, Nguyen argued that section 303(i) damages are only available to an **alleged debtor,** and Mandel challenged the involuntary petition in his capacity as

a **shareholder** of the Alleged Debtor. Nguyen pointed out that
Mandel has no officer status with Synergistic, and he is but one
of three directors (and it takes unanimous action of the
directors of Synergistic to act for the corporation). With
regard to the latter point, it seems that, although Messrs.
Nguyen and Gonzales resigned as officers and directors of
Synergistic on June 25, 2006—leaving Mr. Mandel as the sole
director—Messrs. Nguyen and Gonzales decided to call a special
shareholders meeting of Synergistic on April 17, 2007, after Mr.
Mandel filed the Motion to Dismiss the Involuntary Case. *See*
Exh. PC-4, PC-5, PC-6. At the special shareholders meeting (held
April 27, 2007), Messrs. Nguyen and Gonzales (holding a majority
66.66% voting interest in Synergistic) voted to re-elect
themselves as directors of Synergistic, so that there are now
once again three directors of Synergistic. However, as
previously mentioned, it takes a unanimous vote of the directors
to take certain board of director action on behalf of
Synergistic. Thus, by virtue of the April 27, 2007 postpetition
shareholder election, Synergistic now has a corporate governance
stalemate. The corporation has three directors who do not agree
on anything unanimously. Mandel cannot, according to Nguyen,

8

file suit, defend suit, or ask for section 303(i) damages.[2]
Mandel's current section 303(i) request—it is argued—is not a
request of Synergistic but, rather, is a request of a sole
renegade shareholder/director, Mr. Mandel.

## CONCLUSIONS OF LAW

13.   The court does not accept the notion that this
postpetition corporate governance maneuver on the part of Nguyen
and Gonzales deprives Mandel of his ability to oppose the
involuntary petition or ask for section 303(i) damages for the
effort in opposing it.  Courts in similar situations have
addressed corporate governance stalemates such as these.  In the
case of *In re Westerleigh Dev. Corp.,* 141 B.R. 38 (Bankr.
S.D.N.Y. 1992), Judge Schwartzberg faced a similar issue as here.
There, an involuntary case had been filed against a defunct
corporation by one of two 50% shareholders who claimed to be a
creditor.[3]  The corporation had one asset left, an undeveloped

---

[2] Nguyen also relies on the fact that Synergistic's state corporate
charter may have recently been forfeited, as a basis to argue
Synergistic has no ability to pursue legal actions in court.  *See*
Exh. PC-12 (letter from Secretary State of Texas, dated June 8, 2007,
determining Synergistic's corporate status for alleged failure to pay
a state franchise tax).  This court holds that forfeiture of a
corporate charter does not prevent an alleged debtor from defending
against an involuntary bankruptcy petition or asking for section
303(i) damages in connection with such a defense.

[3] More precisely, it was a family-owned company of the 50% shareholder
that had done business with *Westerleigh* and was now acting as a
petitioning creditor.

parcel of real property, and no agreement among the two shareholders about how to develop it. Both shareholders alleged they were owed money by the corporation—one having a lien on the real property. When the shareholder with the lien on the real property successfully brought a foreclosure action in state court and was about to foreclose, the other shareholder filed an involuntary case. When the other shareholder moved to dismiss, the petitioning-creditor shareholder challenged his capacity to oppose the petition, since he really just spoke for himself as a 50% shareholder and creditor, and not for the alleged debtor entity. Judge Schwartzberg, in addressing this issue, first noted that section 303(d) only permits the following parties to contest an involuntary petition: the alleged debtor, or if the alleged debtor is a partnership, a general partner of the alleged debtor that did not join in the petition. There is technically no standing of a shareholder of a corporate debtor to contest an involuntary petition and no standing for a creditor to contest an involuntary petition. However, here, this posed a problem because the alleged debtor was otherwise unable to answer the petition, since the two shareholders were on either side of the case, with neither having authority to act for the corporation. Judge Schwartzberg noted that certain courts, in this type of

10

situation, have permitted a shareholder to contest an involuntary petition, especially where fraud or some problematic conduct is alleged. Judge Schwartzberg believed that, where a debtor is paralyzed by corporate deadlock from a corporate governance standpoint, the alleged debtor itself is manifestly unable to answer the petition, and so the court must afford to either shareholder the ability to contest the involuntary petition—especially in a case like *Westerleigh* where the petitioning creditor was the other 50% shareholder. Interestingly, Judge Schwartzberg, after finding that the opposing shareholder had standing to oppose the involuntary case on behalf of the alleged debtor, dismissed the case without even reaching the issue of whether the petitioning creditor had a claim that was not the subject of a bona fide dispute or whether the alleged debtor was generally not paying its debts as they became due. The court found that it had the discretion, under section 305 of the Bankruptcy Code, to dismiss the case, since it was nothing more than a two-party shareholder dispute and there was nothing that could or should be accomplished under these circumstances in the bankruptcy court. He did not award sanctions.

14. This court holds that, like the shareholder in *Westerleigh*, Mandel had the capacity or standing to file the Motion to Dismiss, as well as the companion request for section 303(i) damages. This fact pattern is easier than the *Westerleigh* case because, at the time that the Motion to Dismiss was filed, on April 11, 2007, Mandel was, in fact, the sole director of Synergistic—due to Nguyen and Gonzales having abdicated their responsibilities with respect to Synergistic on June 25, 2006. There was no one with whom Mandel had to consult, since he was the sole director of Synergistic at the time he filed the Motion to Dismiss. There can be no question he had authority to file the Motion to Dismiss at the time he filed it as sole director. The court notes that Nguyen argues that his and Gonzales' June 25, 2006 resignation was ineffective, because of Section 9.02(A) of the Synergistic Shareholder Agreement (providing that no "changes" in the original slate of officers and directors shall occur without the unanimous consent of the directors and original shareholders). *See* Exh. PC-1. The court disagrees. Section 9.02(A) only prevents *changes* without unanimous consent. "Changes" cannot reasonably be interpreted to include *resignations*—so that no officer or director could resign unless he had unanimous consent. Not only does this strain logic, but

12

resignations are a topic dealt with in, among other places, Article Three (Sections Three and Four) and Article Four (Sections One and Five), of the Synergistic Bylaws. *See* Exh. PC-2.

15. This court also holds that the re-election by Nguyen and Gonzales on April 27, 2007 of themselves as Directors did not deprive Mandel of continuing to prosecute the Motion to Dismiss and Motion for 303(i) damages. Again, the court adopts the rationale of the *Westerleigh* case, and also relying on section 105 of the Bankruptcy Code, holds that, when there is a corporate governance deadlock that prevents a corporate debtor from taking a position with regard to an involuntary bankruptcy petition, the court should allow shareholders to assert positions on behalf of the alleged debtor.

16. Having held that Mandel still has capacity or standing to seek section 303(i) damages, the court now turns to whether it will grant them.

17. Section 303(i)(1), of course, provides that when there has been dismissal of an involuntary case other than on consent of all the parties, the court *may* grant a judgment awarding the alleged debtor costs or reasonable attorney's fees, unless the alleged debtor has waived this right of recovery.

13

18. Section 303(i)(2), of course, provides that the court *may* also grant a judgment awarding the alleged debtor actual damages proximately caused by the filing, or punitive damages, if the court finds that the petitioning creditor filed the involuntary petition in bad faith.

19. What sort of legal standards do we apply with each of these provisions? With respect to section 303(i)(1), certain courts have opined that it is basically a fee shifting statute and sets up a rebuttable presumption in favor of shifting the alleged debtor's fees and costs to the petitioning creditors. In other words, if there is a dismissal of an involuntary petition (other than on consent of all concerned—and regardless of whether or not there was bad faith), then we simply follow the English Rule of the "loser pays." Other case law focuses more on the use of the word "may" in section 303(i)(1), and on the discretion of the court that the word "may" implies. This court, in a case called *In re Commonwealth Securities Corp.*, 2007 WL 309942 (Bankr. N.D. Tex. Jan. 25, 2007), adopted more of the latter approach—opining that the legal standard to apply is simply a matter of looking at the "totality of circumstances" and the reasonableness or unreasonableness of the petitioning creditor's actions, motives, and objectives. This court notes that former

14

Judge Felsenthal also was of this latter view—as shown in an opinion he wrote called *In re Allied Riser Communications Corp*, 238 B.R. 420, 424 (Bankr N.D. Tex. 2002). So this court concludes that, with respect to section 303(i)(1) attorney's fee shifting, a court looks at the totality of the circumstances. No presumptions apply one way or another.

20. Now, with regard to section 303(i)(2), where a finding of bad faith is required, what is the legal standard for finding bad faith and for awarding consequential or punitive damages? The majority of case law states that there is indeed a presumption here: a presumption that the petitioning creditors acted in good faith in filing an involuntary petition, and that the alleged debtor then has a burden of proving bad faith by a preponderance of the evidence. *See In re United States Optical, Inc.*, 1993 U.S. App. LEXIS 6960 at 10 (4th Cir. 1993) (unpublished); *In re LaRoche*, 131 B.R. 253 at 256 (D. R.I. 1991); *In re Valdez*, 250 B.R. 386 at 390 (D. Or. 1999); *In re Mylotte, David & Fitzpatrick*, 2007 Bankr. LEXIS 2375 at 29 (Bankr. E.D. Pa. 2007); *In re Tichy Elec. Co.*, 332 B.R. 364 at 371 (Bankr. N.D. Iowa. 2005); *In re E.S. Prof'l Servs.*, 335 B.R. 221 at 226 (Bankr. S.D. Fla. 2005); *In re Smith*, 243 B.R. 169 at 194 (Bankr. N.D. Ga. 1999); *In re Reveley*, 148 B.R. 398 at 406 (Bankr. S.D.

Case 07-31733-sgj7 Doc 61 Filed 08/06/07 Entered 08/06/07 16:26:53 Page 16 of 23

N.Y. 1992); *In re Elsub Corp.*, 1986 Bankr. LEXIS 6180 at 15 (Bankr. D. N.J. 1986); *In re Alta Title Co.*, 55 B.R. 133 at 141 (Bankr. D. Utah 1985).

21. This court will adopt this majority position.

22. Additionally, there is a legal question of whether an alleged debtor may be awarded punitive damages in the absence of actual damages? The majority of case law holds that punitive damages may be awarded under section 303(i)(2) in the absence of actual damages. *See In re Oakley Custom Homes,* 168 B.R. 232 (Bankr. D. Colo. 1994) ("an award of punitive damages may enter whether or not there is proof of actual damages"); *See also In re Advance Press & Litho, Inc.*, 46 B.R. 700 (Bankr. D. Colo. 1984) ("the Bankruptcy Code specifically authorizes, in § 303(i)(2), punitive damages even in the absence of or in addition to actual damages"); *See In re Wavelength, Inc.*, 61 B.R. 614 at 619 (Bankr. Fed. App. 1986); *In re Cadillac by Delorean & Delorean Cadillac, Inc.*, 265 B.R. 574 at 584 (Bankr. N.D. Ohio 2001); *In re Atlas Mach. & Iron Works*, 190 B.R. 796 at 804 (Bankr. E.D Va. 1995); *In re Val W. Poterek & Sons,* 169 B.R. 896 at 905 (Bankr. N.D. Ill. 1994); *In re Johnston Hawks, Ltd.*, 72 B.R. 361 at 366 (Bankr. D. Haw. 1987).

16

23. Having set forth these legal standards, the court now turns to the facts to determine whether, first, considering the totality of the circumstances, and all of the Petitioning Creditor's *actions, motives, and objectives*, Synergistic should have its attorney's fees reimbursed by Mr. Nguyen under 303(i)(1).

24. Here the court will allow reimbursement for Synergistic's lawyer, Mr. Lewis', fees and expenses to date, of **$7,520,** incurred through May 20, 2007 on the involuntary case (as proved through Exh. D-2) and an estimated **$3,000** of fees and expenses that Mr. Lewis testified that he had incurred in connection with the section 303(i) motion, for a total of **$10,520.** The court finds these fees and expenses to have been reasonable under the circumstances. The court finds these fees and expenses to have been incurred on behalf of the Alleged Debtor, acting through Mr. Mandel. However, that is all the court is going to allow. The court is not going to allow more attorney's fees for estimated appellate fees and costs. The court has the discretion under section 303(i)(1) not to allow this, and the court will explain why it is not going to allow more hereinafter. It ties in to the court's next ruling regarding section 303(i)(2) damages.

17

25. With regard to section 303(i)(2), the court next
addresses whether Synergistic has overcome the presumption of Mr.
Nguyen's good faith, and proved by a preponderance of the
evidence, bad faith.

26. Again, one must turn to the totality of the
circumstances here—considering such things as *actions, motives
and objectives* of the parties. The totality of the circumstances
were that the bankruptcy was filed in the middle of litigation
and arbitration, both of which had been pending for a
considerable length of time. The litigation and arbitration
appears to have finally been teed up for resolution. The filing
of the involuntary case was forum shopping to avoid that
litigation and arbitration. It is clear to this court that Mr.
Nguyen did not want to go forward any more with that litigation
and arbitration. Sometimes forum shopping is, frankly, fine. It
is done all the time. People file bankruptcy to stop foreclosure
proceedings. Companies like Texaco file bankruptcy to avoid the
appellate process which they cannot afford to wage. Companies or
petitioning creditors file to accomplish a more orderly,
supervised liquidation of the company than might be accomplished
outside the bankruptcy court. But the difference between those
situations and this one is that, with foreclosure for example, a

18

debtor is filing a case to avoid a catastrophic loss of assets and to obtain a breathing spell—to regroup and try to reorganize. And in a case such as *Texaco*, a viable business with many employees and operations worldwide was at risk of being dismantled by the actions of one judgment creditor—to the detriment of thousands of other legitimate creditors—if Texaco did not resort to the bankruptcy court, since Texaco could not post an appeal bond without draining most of its liquid assets. And in a liquidation context, sometimes there is a risk of irresponsible dismantling of an enterprise that might be unfair to certain creditors, if there is not a bankruptcy-supervised process. These common examples are not the type of forum shopping we had here. Here, there was a bankruptcy filing with no motive of salvaging an enterprise, nor salvaging a valuable asset, nor gaining a needed respite so that perhaps a plan might be formulated to deal with debt. Synergistic is a defunct company, with—according to the evidence—$4,726.91 in a bank account. It has likely only one non-shareholder creditor, whose claim could be ultimately paid with the money in the bank account. This was not a situation where bankruptcy was filed to save an enterprise; to save valuable assets; or to accomplish an orderly liquidation so that creditors are paid what they are

justly due. This was a shareholder dispute that Mr. Nguyen decided to divert to another forum, hopefully with the free help of a bankruptcy trustee.

27. The court does not believe that bankruptcy was an appropriate strategy here and, *even without the "bona fide dispute" issue with regard to Mr. Nguyen's claim*, this court would do exactly what Judge Schwartzberg did and dismiss this case under section 305. Nevertheless, the court finds, under the totality of the circumstances, that Mr. Mandel has not overcome the presumption of Mr. Nguyen's good faith and proved bad faith by a preponderance of the evidence. Nguyen testified very credibly that he was just wanting to bring in a neutral third party (*i.e.,* a bankruptcy trustee) to end this litigation nightmare. He was running out of money, he said, to wage this fight before the AAA. He believed, based on advice of counsel, that the bankruptcy filing was a viable strategy. There was no ill will, malice or desire to embarrass or cause harm to the Synergistic entity on the part of Mr. Nguyen. And although bankruptcy was an inappropriate strategy here, it was not being used by Mr. Nguyen to obtain a disproportionate advantage for himself, but more to simply wind down everything, and stop what he viewed as Mr. Mandel's disproportionate advantage. Mr.

Mandel, had he chosen to testify, might have said something to convince this court otherwise, but he did not and, so, he did not meet his burden of proving bad faith on the part of Mr. Nguyen.

28. In reality, the court believes, if there is any bad behavior here, there is plenty to go around, and the court cannot tag it all on Mr. Nguyen. In fact, the court looks at this record and is rather dumbfounded. Mr. Mandel and Mr. Travis initiated the first litigation strike here, when the company in which Mandel **had invested a mere $50,000** (and it is not even clear that this was cash—it may have merely been used equipment) had paid at most $50,000 to $60,000 to Nguyen and Gonzales in salary and loans. Perhaps these payments gave rise to a legitimate cause of action, and perhaps Nguyen and Gonzales should have known better. But, in the context of a start up company, where people were working long hours, and where Nguyen (unlike the other shareholders) had personally guaranteed a $300,000 loan, it certainly appears to this court that these were issues that could have been promptly mediated and worked out by reasonable parties and lawyers. The evidence showed that Synergistic never made a profit and, in fact, only grossed $208,724 of revenue during its brief time in existence. The evidence further showed that the AAA arbitrators have incurred

$100,000 in fees and expenses and, from the stack of papers submitted from the two lawsuits and arbitration, this court suspects far more has been paid in aggregate attorney's fees (to the three shareholders' respective counsel). All because of disputes surrounding a company that was in existence for barely a year, in which each shareholder contributed a mere $50,000. This is very sad for all three shareholders. Somewhere long ago, somebody or bodies lost the forest for the trees. Somewhere, this became about winning at all costs. Possibly it is client-motivated and possibly lawyer-motivated. But everyone is losing.

29.     In any event, while this court felt it was necessary and appropriate under § 303(i)(1) to allow Mr. Lewis's fees and expenses to be reimbursed, since this matter does not belong in the bankruptcy forum, this court is not going to further fuel Mr. Mandel's or Mr. Travis's or anyone else's fire, by dangling out there the prospect of more fee reimbursement to Synergistic. This is largely why this court will not allow reimbursement for future attorney's fees in connection with the appeal of this court's May 16th ruling.

30. In summary, this court does not find, under these circumstances, that there is bad faith—under either an objective or subjective standard—that should be tagged onto Mr. Nguyen, or

22

Unishippers for that matter.  Bankruptcy was but one of several
legal maneuvers on various fronts by the various parties that
this court believes was a misguided strategy.  The court believes
that Mr. Nguyen should, under section 303(i)(1), have to pay the
attorney's fees spent by Synergistic through Mandel to stop the
bankruptcy.  However, under the totality of the circumstances,
and considering the actions, motives, and objectives of *all*
parties concerned, the court does not find, by a preponderance of
the evidence, bad faith on Mr. Nguyen's part to assess actual or
punitive damages.

        Accordingly, the court will enter a separate JUDGMENT in
favor of Synergistic, in the amount of $10,520, payable to Mr.
Mandel on the eleventh day after entry of the court's order.

        * * * END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW * * *